Fatima FURTADO

v.

Claire A. LAFERRIERE.

No. 2002–594–Appeal.

Supreme Court of Rhode Island.

Jan. 9, 2004.

Carolyn Ann Mannis, for Plaintiff.

Mark H. Burnham, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## OPINION

PER CURIAM.

The plaintiff, Fatima Furtado (plaintiff), appeals from a final judgment in favor of the defendant, Claire A. Laferriere (defendant). This case came before the Supreme Court for oral argument on September 24, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. We vacate the judgment and remand the case to the Superior Court for a trial on the merits of the plaintiff's personal injury claim against the defendant.

## I

### Facts and Travel

This litigation arises out of a 1994 automobile accident between plaintiff and defendant. The plaintiff subsequently filed two personal injury actions against defendant. The plaintiff filed the first action against defendant on the eve of the expiration of the three-year statute of limitations for filing a personal injury claim. That suit was dismissed without prejudice for insufficient service of process pursuant to Rule 4(l) of the Superior Court Rules of Civil Procedure.

Less than one year later, plaintiff filed the instant action against defendant, and the case was assigned a different case number than the first. The defendant filed a motion for summary judgment, arguing the statute of limitations on plaintiff's personal injury claim had run. The plaintiff countered that she was entitled to the protection of G.L.1956 § 9–1–22, which is known as the savings statute, and that the statute of limitations on her personal injury claim was, therefore, tolled. The motion justice granted summary judgment in favor of defendant at a hearing held on August 9, 2001. The order for summary judgment was entered on September 5, 2001, but final judgment was not entered concurrently. The defendant later moved for final judgment on both cases. Final judgment was entered on June 27, 2002. The plaintiff appealed to this Court on July 10, 2002.

## II

### Propriety of the Appeal

■ The defendant first argues that plaintiff's appeal of July 10, 2002 should be dismissed because it was filed out of time. Pursuant to Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure, the appealing party must file a notice of appeal within twenty days of the date of entry of judgment, order or decree. The issue, therefore, is whether the twenty-day appeal period began to run on September 5, 2001,[1] when the order for summary judgment was entered, or on June 27, 2002, when the final judgment was entered.

According to G.L.1956 § 9–24–1, an appeal may be taken only from a "final judg-

ment, decree or order of the superior court." Rule 58(a) of the Superior Court Rules of Civil Procedure governs the entry of final judgment, and provides:

> "(1) upon a decision * * * that all relief shall be denied, the clerk * * * shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court; (2) upon a decision by the court granting other relief * * * the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it. *Every judgment shall be set forth on a separate document."* (Emphasis added.)

There is a dichotomy among cases interpreting the separate document provision of Rule 58(a). In the past, this Court has allowed parties to appeal from the entry of certain orders without regard for the entry of a separate final judgment in accordance with Rule 58. For example, in *McClellan v. Thompson,* 114 R.I. 334, 340–41, 333 A.2d 424, 427–28 (1975), this Court held that a party must appeal from the entry of a dispositive order. *See also Driscoll v. Karroo Land Co.,* 600 A.2d 722, 723 & n. 1 (R.I.1991); *Brenner Associates, Inc. v. Rousseau,* 537 A.2d 120, 122 (R.I.1988); *Russell v. Kalian,* 414 A.2d 462, 464 (R.I. 1980).

■ Recent decisions of this Court, however, highlight the distinction between an entry of summary judgment and an entry of final judgment, making it clear that an appeal should be taken from the entry of a separate final judgment. In *Cipolla v. Rhode Island College, Board of Governors for Higher Education,* 742 A.2d

---

1. In his brief, defendant argues that the twenty-day appeal period began on August 9, 2001, which defendant refers to in her memorandum as the date of "entry of the dispositive order granting [defendant's] summary judg-

ment motion." August 9, 2001, however, is merely the date on which the motion justice granted summary judgment. The order for summary judgment was actually entered on September 5, 2001.

277, 280 n. 2 (R.I.1999), this Court noted that a "final judgment was never entered in accord[ance] with Rule 58 of the Superior Court Rules of Civil Procedure," and the appeal from entry of summary judgment, therefore, was premature. Nevertheless, because neither party in that case challenged the propriety of the appeal, this Court considered it.

Similarly, in *Norwest Mortgage, Inc. v. Masse*, 799 A.2d 259, 260 (R.I.2002) (per curiam), a Superior Court motion justice entered an order dismissing a plaintiff's complaint. Final judgment was not entered until five months later. *Id.* The plaintiff then appealed from the later, final judgment. This Court held that, pursuant to Rule 58, the earlier entry of the dismissal order constituted an unappealable interlocutory order while the later entry of separate final judgment constituted final judgment for purposes of appeal. We held, therefore, that plaintiff timely appealed from the final judgment. *Norwest Mortgage, Inc.*, 799 A.2d at 260, 262.

■ Under *Norwest Mortgage, Inc.*, the summary judgment in this case was an interlocutory order. This Court may hear an appeal from an interlocutory order if public policy considerations warrant or if immediate action is necessary in order to avoid imminent and irreparable harm. *Westinghouse Broadcasting Co. v. Dial Media, Inc.*, 122 R.I. 571, 410 A.2d 986, 989 (1980). Further, an interlocutory order may be considered final for purposes of appeal when, after a hearing in the Superior Court, an injunction is granted or continued, or a receiver appointed, or a sale of real or personal property ordered,

or a new trial ordered or denied after a trial by jury. Section 9–24–7. Finally, Rule 54(b) [2] of the Superior Court Rules of Civil Procedure allows an interlocutory order to be certified as an appealable final order under certain circumstances.

The summary judgment order in this case is not an appealable interlocutory order under any common law or statutory exceptions. First, there were no overriding public policy considerations or risks of imminent and irreparable harm raised by the summary judgment order such that immediate appeal from the summary judgment order was warranted. *Westinghouse Broadcasting Co.*, 410 A.2d at 989. A summary judgment order further is not one of the four specific types of appealable interlocutory orders listed in § 9–24–7. Finally, the motion justice did not attempt to certify the summary judgment order as final pursuant to Rule 54(b). Accordingly, the proper time to appeal started with the June 2002 entry of final judgment.

■ The dissent would hold that plaintiff waived her right to have final judgment entered on a separate document because she failed to move for final judgment within a reasonable period. This argument tracks language in Rule 58(b)(2)(B) of the Federal Rules of Civil Procedure, which provides that "[j]udgment is entered for purposes of these rules * * * when 150 days have run from entry in the civil docket * * *." Because similar language is noticeably absent from our Rule 58, we will not imply an analogous waiver provision. Thus, unless and until Rule 58 is amended, a plaintiff may file an appeal within twenty days of the separate entry of

---

2. Rule 54(b) of the Superior Court Rules of Civil Procedure provides in relevant part that:
   "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are in-

volved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon express direction for the entry of judgment."

final judgment, regardless of when such judgment is entered.

■ Until an amendment to the relevant rules and statutes dictates otherwise, in light of *Cipolla* and *Norwest Mortgage, Inc.* we hold that only a separate entry of final judgment in accordance with Rule 58(a) constitutes an appealable judgment for purposes of Rule 4(a). Therefore, pursuant to Rule 4(a), the twenty-day appeal period began to run when final judgment was entered on June 27, 2002. The plaintiff's appeal, therefore, is timely.

## III

### Summary Judgment

■ It is well established that "[w]e review a motion justice's decision on a motion for summary judgment *de novo.*" *Deus v. S.S. Peter & Paul Church,* 820 A.2d 974, 976 (R.I.2003) (per curiam). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I. 1996). "Only when a review of the evidence in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's order granting summary judgment." *JH v. RB,* 796 A.2d 447, 449 (R.I.2002) (quoting *Sobanski v. Donahue,* 792 A.2d 57, 59 (R.I.2002)).

■ The defendant moved for summary judgment in this case arguing that the statute of limitations for plaintiff's personal injury claim had expired before the instant action was filed. The plaintiff counters that she is entitled to bring her claim pursuant to § 9–1–22. Section 9–1–22 provides that:

> "If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff * * * may commence a new action upon the same claim within one year after the termination."

The plaintiff's first case clearly was not terminated by a voluntary discontinuance or by a final judgment upon the merits. The issue, therefore, is whether plaintiff's initial action was terminated by a dismissal "for neglect to prosecute the action." *Id.* Because the plaintiff's initial claim was dismissed for insufficient service of process pursuant to Rule 4(*l*) of the Superior Court Rules of Civil Procedure, and not for lack of prosecution under Rule 41(b) of the Superior Court Rules of Civil Procedure, we hold that plaintiff's claim is protected by the savings statute.

When comparing Rules 41(b)(1) and 4(*l*) with the language of § 9–1–22,[3] it is apparent that dismissal pursuant to Rule 4(*l*) does not constitute dismissal for neglect to prosecute, which is addressed only in Rule 41(b)(1). Rule 41(b)(1) provides a mechanism for the dismissal of a case for lack of prosecution. Rule 41(b)(1) allows the court, in its discretion, to "dismiss any action for lack of prosecution where the action has been pending for more than 5 years, or, at any time, for failure of the

---

**3.** General Laws 1956 § 9–1–22 refers to "neglect" to prosecute the action. Although Rule 41(b) of the Superior Court Rules of Civil Procedure refers to "lack of prosecution," we are satisfied these two terms are functionally equivalent in this context and use the phrases interchangeably.

plaintiff to comply with these rules or to proceed when the action is reached for trial." Rule 4(*l*) authorizes dismissal of a case for failure to serve process within 120 days of commencement of a suit. This Court has made clear that these two rules constitute separate grounds for dismissal, and that when Rule 4(*l*) specifically applies, the more general provisions of Rule 41(b)(1) do not apply. *Lindia v. Nobles,* 760 A.2d 1244, 1245–46 (R.I.2000) (per curiam); *Jackson v. Medical Coaches,* 734 A.2d 502, 506–07 (R.I.1999). The Superior Court applied Rule 4(*l*), and not Rule 41(b), to dismiss plaintiff's initial action. Because plaintiff's first case was not dismissed for neglect to prosecute pursuant to Rule 41(b), the provisions of § 9–1–22 apply to save her current claim from the expiration of the statute of limitations.

According to defendant, plaintiff, in the first case, inexcusably neglected to effectuate service of process pursuant Rule 4(*l*). Thus, defendant argues, plaintiff's original case was dismissed for neglect to prosecute as the phrase is contemplated under § 9–1–22. However, any fault on the part of plaintiff in serving process in the first case is irrelevant for determining plaintiff's entitlement to the savings statute here because the first case was specifically dismissed pursuant to Rule 4(*l*). As discussed *supra,* neglect to prosecute is only addressed in Rule 41, and a motion justice is prohibited from dismissing a case for insufficient service of process under the more general provisions of Rule 41. *See Lindia,* 760 A.2d at 1245–46.

Even if the motion justice could have dismissed the initial case under Rule 41 for insufficient service of process, such a dismissal would not constitute a dismissal for lack of prosecution under that Rule. Rule 41(b)(1) specifically defines lack of prosecution as an instance in which "the action has been pending for more than 5 years."

The fact that Rule 41(b)(1) also authorizes dismissal for "failure of the plaintiff to comply with [court] rules" does not expand the meaning of "lack of prosecution" to include dismissal for insufficient service of process. The wording of Rule 41(b)(2) reinforces this view. Rule 41(b)(2) states that, upon motion of a defendant, the court may "dismiss any action for failure of the plaintiff to comply with these rules or any order of court or for lack of prosecution as provided in paragraph (1) of this subdivision." The word "or" separates the two grounds for dismissal under Rule 41(b)(2): "lack of prosecution where the action has been pending for more than 5 years" and "failure of the plaintiff to comply with these rules or any order of court." This indicates that dismissal for failure to comply with court rules does not constitute "lack of prosecution" under any subsection of Rule 41.

█  In addition, plaintiff's original case was dismissed without prejudice. It is elementary that a dismissal without prejudice "prevent[s] the decree of dismissal from operating as a bar to a subsequent suit." Black's Law Dictionary 421 (5th ed. 1979). Moreover, this Court previously has acknowledged that a dismissal granted "without prejudice" because of insufficient service of process does not preclude a plaintiff from refiling upon the same claim. *International Brotherhood of Police Officers, Local No. 302 v. Town of Portsmouth,* 506 A.2d 540, 542 (R.I.1986). The plaintiff filed her initial action on the eve of the expiration of the statute of limitations. Consequently, the termination of that case precluded the initiation of a subsequent action unless that action were saved under § 9–1–22. By dismissing the first action without prejudice, it is apparent the court intended to dismiss the case in a manner that would provide protection under the savings statute. By denying

plaintiff the protection of the savings statute, the motion justice in the second case effectively reassessed the ruling in the first case and determined that dismissal should have been with prejudice.

Finally, we acknowledge the dissent's argument that a plaintiff who inexcusably neglects to serve process should not be entitled to the protection of the savings statute. This is not, however, to indicate concurrence with dissent's argument. Because we hesitate to deprive a plaintiff of his or her day in court, until the General Assembly amends § 9–1–22 to indicate clearly its concurrence with the dissent's argument we hold that § 9–1–22 does apply to save the claim of a party whose case is dismissed under Rule 4(*l*). Thus, because plaintiff's original case was not dismissed for lack of prosecution, and was further dismissed without prejudice, the savings statute applies to plaintiff's current suit.

### Conclusion

For the reasons stated herein, we reverse the judgment of the Superior Court. The record shall be remanded to the Superior Court for a trial on the merits of the plaintiff's personal injury claim against the defendant.

FLANDERS, Justice, dissenting.

I respectfully dissent. The plaintiff waited over ten months after the motion justice entered the order granting defendant's summary-judgment motion to file her notice of appeal. It was only after defendant moved for, and obtained, the entry of a final judgment on a separate document that plaintiff apparently decided to appeal. In these circumstances, I would hold that the plaintiff waived her right to obtain appellate review by failing to take an appeal from the order granting a summary judgment in a timely manner and by

failing to obtain the entry of a final judgment within a reasonable period after the court entered the summary-judgment order.

I also would hold that plaintiff is not entitled to take advantage of the savings statute. The plaintiff's failure to serve this defendant with process for approximately three years after filing her original complaint amounted both to a voluntary discontinuance and to a neglect to prosecute her first lawsuit. As a result, I would hold that she was not entitled to take advantage of the savings statute through the filing of a new action within one year of the order dismissing the first lawsuit. Although the order of dismissal itself under Rule 4(*l*) of the Superior Court Rules of Civil Procedure was without prejudice to the refiling of the lawsuit, it did not serve to immunize plaintiff from the running of the statute of limitations in the interim or from any other applicable defenses. Thus, I would affirm the summary judgment for defendants.

### I

### Waiver of Rule 58's Separate Document Requirement

Rule 54(a) of the Superior Court Rules of Civil Procedure provides that the word " '[j]udgment' as used in these rules includes a decree and any order from which an appeal lies." But Rule 58(a) of the Superior Court Rules of Civil Procedure states that "[e]very judgment shall be set forth on a separate document." Thus, if an order granting summary judgment disposes of all the issues in a case and the court enters it on a separate document from the decision itself, does it constitute a "judgment" from which an appeal lies? Although the rules themselves do not provide a definitive answer to this question, the case law appears to suggest that, notwithstanding the broad definitional lan-

guage in Rule 54(a), the order is not appealable until a judgment enters on a document that is separate, not only from the decision granting that motion, but also the order that entered implementing the decision.

The separate-document language in Rule 58(a) is identical to the corresponding provision in Rule 58 of the Federal Rules of Civil Procedure before it was amended in 2002. "Thus, this Court may properly look to a federal court interpretation of the analogous federal rule for guidance in applying our own state's rule." *Astro–Med, Inc. v. R. Moroz, Ltd.*, 811 A.2d 1154, 1156 (R.I.2002) (per curiam). Since 1963, Federal Rule 58 has included a separate-document requirement. Its purpose was to alleviate uncertainty concerning what actions of the trial court constituted the entry of a judgment and, consequently, to fix the beginning of the period in which the losing party can file a notice of appeal to obtain appellate review of the trial court's final judgment. *See United States v. Indrelunas*, 411 U.S. 216, 219–20, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973). This separate-document requirement represented a " 'mechanical change' that must be mechanically applied to avoid new uncertainties as to the date on which a judgment is entered." *Id.* at 221–22, 93 S.Ct. 1562.

Nevertheless, the United States Supreme Court has allowed parties to waive Rule 58's mechanical separate-document requirement when both parties assented to the waiver. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 387–88, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978); *Willhauck v. Halpin*, 919 F.2d 788, 792 (1st Cir.1990). But the Supreme Court emphasized that courts should interpret the rule "to prevent loss of the right of appeal, not to facilitate loss." *Bankers Trust Co.*, 435 U.S. at 386, 98 S.Ct. 1117 (quoting 9 J. Moore, *Federal Practice* ¶110.08[2] at 119–20 (1970)).

Before the 2002 amendment to Federal Rule 58, the First Circuit expanded the circumstances in which it would infer a waiver of the parties' right to have a judgment entered on a separate document. *Fiore v. Washington County Community Mental Health Center*, 960 F.2d 229, 236 (1st Cir.1992). To avoid parties prolonging possible appeals for an indefinite period, the First Circuit established "a clear rule that waiver of the right to judgment entered on a separate document will be inferred [when] a party fails to act [to cause the entry of a judgment on a separate document] within three months of the court's final order in a case." *White v. Fair*, 289 F.3d 1, 6 (1st Cir.2002) (citing *Fiore*, 960 F.2d at 236). The First Circuit recognized that limiting the amount of time in which a losing party can move for or otherwise secure the entry of a final judgment on a separate document had the effect of cutting off that party's right to appeal after the expiration of that period. *See White*, 289 F.3d at 7–8. Nevertheless, the First Circuit reasoned that it would not allow Rule 58's separate-document requirement to permit a losing party to indefinitely enlarge and prolong the period in which it could file a timely notice of appeal from the entry of a final order or other court action in question. *See id.*

In December 2002, the Federal Rules of Civil Procedure codified the First Circuit's approach to Rule 58, providing that a party waives its right to the entry of judgment on a separate document if it fails to move for the entry of same within 150 days of the docketed entry of the order in question. Fed.R.Civ.P. 58(b)(2)(B) (Dec. 1, 2002 amendment). The purpose of the 150–day deadline for entering a judgment on a separate document is to "ensure that parties will not be given forever to appeal (or to bring a post-judgment motion) when a court fails to set forth a judgment or

order on a separate document in violation of [Rule 58]." Amendments to the Federal Rules of Appellate Procedure, Communication from the Chief Justice, the Supreme Court of the United States Transmitting Amendments to the Federal Rules of Appellate Procedure That Have Been Adopted by the Court Pursuant to 28 U.S.C. § 2072, 207 F.R.D. 655, 706 (Dec. 1, 2002). In other words, the current version of Federal Rule 58 recognizes that the purpose of the separate-document requirement is to fix with certainty the point at which the appeal period begins to run for the losing party to obtain review of an appealable order. *Scola v. Boat Frances R., Inc.,* 618 F.2d 147, 151 (1st Cir.1980). By incorporating the First Circuit's waiver doctrine into Rule 58 itself, however, the federal courts do not allow the parties to indefinitely enlarge the time to take an appeal or to file post-judgment motions merely by ignoring the court's failure to enter a final judgment on a separate document from the order disposing of all issues in the case.

This Court also has recognized the mechanical application of Rule 58's separate-document requirement, stating that trial courts always should enter judgments on a separate document from the decision or order in question. *See Mosca v. Cournoyer,* 438 A.2d 665, 666 (R.I.1981). But to facilitate appeals, this Court, like the Untied States Supreme Court in *Bankers Trust Co.,* has often waived technical compliance with this rule. *See Cipolla v. Rhode Island College, Board of Governors for Higher Education,* 742 A.2d 277, 280 n. 2 (R.I.1999) (per curiam); *Leiter v. Allstate Insurance Co.,* 725 A.2d 882, 883 n. 2 (R.I.1999) (per curiam); *Solomon v. Progressive Casualty Insurance Co.,* 685 A.2d 1073, 1074 n. 1 (R.I.1996) (mem.). For example, we have stated that parties waive the right to have the judgment entered on a separate document when they fail to raise a Rule 58 objection to the lack of a final judgment prior to appeal. Similarly, we have not applied Rule 58's separate-document requirement mechanically when the trial court's failure to enter a separate judgment resulted from clerical error. *Driscoll v. Karroo Land Co.,* 600 A.2d 722, 723 n. 1 (R.I.1991); *Brenner Associates, Inc. v. Rousseau,* 537 A.2d 120, 122 (R.I. 1988). Still other decisions have foregone rigid compliance with Rule 58, reasoning, instead, that the trial court's judgment substantially complied with the separate-document rule. *Mosca,* 438 A.2d at 666. We have even construed a Rule 54(b) order granting summary judgment as interlocutory, thereby preserving a losing party's right to appeal from a judgment that entered approximately six months after entry of the Rule 54(b) order directing the entry of a final judgment. *Norwest Mortgage, Inc. v. Masse,* 799 A.2d 259, 261–62 (R.I.2002) (per curiam).

By limiting the amount of time for parties to secure the entry of a final judgment on a separate document, we would not undermine the rule's basic purpose of facilitating appeals. *See Bankers Trust Co.,* 435 U.S. at 386, 98 S.Ct. 1117. As previously mentioned, the purpose of Rule 58's separate-document requirement is to fix the point at which the appeal period begins to run for the losing party to obtain appellate review. But by allowing losing parties to ignore, indefinitely, the lack of any entry of a judgment on a separate document from the final order or decision in question, we permit them to suspend their right to file post-judgment motions and to obtain appellate review of the order or decision in question for an indefinite period. *See Fiore,* 960 F.2d at 236. Thus, what is supposed to be a relatively fleeting option to take an appeal or challenge the judgment by motion becomes a permanent sword of Damocles forever hanging over

the lawsuit's finality—until one party or the other decides to let it plunge by entering a judgment on a separate document, thereby allowing the losing party to file a belated notice of appeal or a post-judgment motion.

In this case, plaintiff relied on Rule 58's separate-document requirement to file a notice of appeal on July 10, 2002. This was approximately eleven months after August 9, 2001, the date that a motion justice granted defendant's motion for summary judgment, and more than ten months after the court entered the summary-judgment order on September 8, 2001. But no final judgment entered on a separate document until June 27, 2002. Under Rule 54(a), the summary-judgment order that entered on September 8, 2001, constituted a final disposition of the controversy because it ended the litigation on the merits, leaving nothing for the court to do but to enter judgment for the prevailing party on a separate document. *See Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."). The clerk, however, neglected to enter a separate judgment under Rule 58(a), and neither party moved the court or requested the clerk to do so. On June 27, 2002, more than nine months later, the motion justice, at defendant's request, finally entered a final judgment on a separate document.[4] This entry of judgment apparently prompted plaintiff to file her notice of appeal on July 10, 2002, which was within twenty days from the entry of the final judgment, but more than ten months from the entry of the order granting summary judgment.

If this Court, like the First Circuit and other federal courts, were to limit the amount of time within which a party could move for the entry of a judgment on a document separate from the order or decision itself, to a reasonable period after entry of the order in question, then plaintiff's appeal would not have been timely under Article I, Rule 4 of the Supreme Court Rules of Appellate Procedure. Instead, both parties would be deemed to have waived their right to the entry of a final judgment on a separate document by failing to move for or otherwise to obtain the entry of same within a reasonable period (for example, the 150–day period of Federal Rule 58(b)) after the docketing of the order granting the summary judgment. Although this result may appear harsh from an appellant's point of view, forcing the opposing side to indefinitely defend against a claim arising out of an accident that occurred in 1994 is also inequitable. And requiring the courts to keep the case open in a state of suspended animation for an indefinite period hardly fosters the interests of judicial economy. Adopting the federal approach to this issue would force parties who wish to appeal to move for or secure the entry of final judgment in a timely manner—or waive their right to appeal if they fail to do so—and thereby further Rule 58's goal of fixing the date from which the twenty-day period to file a notice of appeal begins to run.

Here, the record suggests that plaintiff took advantage of every opportunity to delay the timely resolution of this dispute. First, she waited until the day before the running of the three-year statute of limitations to file her original complaint. Thereafter, she neglected to serve defendant with process for another three years, at

---

4. During that period, plaintiff petitioned this Court for a writ of certiorari, which we de-

nied on April 19, 2002 (No. 02–14–M.P.).

which point the Superior Court finally dismissed her complaint under Rule 4(*l*) of the Superior Court Rules of Civil Procedure. She then delayed filing her notice of appeal for approximately ten months after the court entered a summary-judgment order against her on her second lawsuit, waiting until defendant moved for and obtained the entry of a final judgment. Interpreting Rule 58 to permit plaintiff's appeal unjustly allows parties who are guilty of unreasonably delaying the case to place these cases on ice for indefinitely long periods while they contemplate the possibility of prosecuting a stale appeal.

Therefore, I would vacate the final judgment on June 27, 2002, and dismiss plaintiff's appeal as untimely, ruling that she waived the right to the entry of judgment on a document separate from the summary-judgment order itself by failing to move for same within a reasonable period after the court entered that order.

## II

### Failing to Serve Defendant With Process Constituted a Voluntary Discontinuance and a Neglect to Prosecute the First Action

In certain limited circumstances, G.L. 1956 § 9–1–22 [5] (the savings statute) allows a party to recommence an action within one year after the dismissal of a prior lawsuit. The savings statute does not apply, however, when there has been a "voluntary discontinuance" of the first action or when the court has dismissed the first lawsuit for "neglect to prosecute the action." *Id.*

In this case, I would not afford this plaintiff the protections of the savings statute because, by dithering for three years after filing her complaint, she willfully neglected to serve defendant with process in a timely manner, as required by Rule 4(*l*), thereby causing the dismissal of her first lawsuit. When, as here, plaintiff could have served process within a reasonable period after filing the complaint, but simply neglected to do so, such a dismissal under Rule 4(*l*) is the equivalent of a voluntary discontinuance for the plaintiff's deliberate neglect to prosecute her lawsuit. *See Caprio v. Fanning & Doorley Construction Co.*, 104 R.I. 197, 198–200, 243 A.2d 738, 740–41 (1968) (affirming Superior Court's dismissal of action for want of prosecution for failing to serve defendants with process for fourteen months because plaintiff failed to comply with the rules of procedure). Such a dismissal bars plaintiff's later use of the savings statute to file another lawsuit because that statute cannot be invoked when the prior action was dismissed because of a voluntary discontinuance or because of a neglect to prosecute the action.

Generally, this Court has denied a plaintiff the benefit of the savings statute when the previous dismissal resulted from the plaintiff's voluntary act or neglect. *Robinson v. Merchants' & Miners' Transportation Co.*, 16 R.I. 637, 639, 19 A. 113, 114–15 (1889) (recognizing savings statute does not apply when plaintiff is defeated by his own voluntary action or neglect); *see also Giarrusso v. Brown & Sharpe Manufacturing Co.*, 72 R.I. 229, 237–38, 50 A.2d 72, 76 (1946) (holding that default for failure to prosecute—a voluntary nonsuit at com-

---

**5.** General Laws 1956 § 9–1–22 provides as follows:

"**Extension of time after termination of action.** If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or if he or she dies and the claim survives, his or her executor or administrator, may commence a new action upon the same claim within one year after the termination."

mon law—was not within ambit of savings statute); *McLaughlin v. Dunlop*, 70 R.I. 155, 160, 37 A.2d 779, 782 (1944) (affirming that voluntary nonsuit removes plaintiff from reach of statute); *Gray v. Ahern*, 63 R.I. 363, 366–67, 9 A.2d 38, 40 (1939) (refusing to apply statute in favor of plaintiff who "intentionally and voluntarily, discontinued her action"); *Sullivan v. John R. White & Son, Inc.*, 36 R.I. 488, 491, 90 A. 738, 740 (1914) (recognizing that if plaintiffs voluntarily abandon their lawsuits, that is, if they are nonsuited by causes that are not entirely external to themselves, then the savings statute would not apply).

For this reason, I would not allow plaintiff to take advantage of the savings statute because the dismissal of her first lawsuit for failing to serve process in a timely manner amounted either to a voluntary discontinuance, or to a neglect to prosecute the action with diligence, or to both of these disqualifying circumstances. This Court has stated that the savings statute "does not apply in favor of a plaintiff who abandons an action for no other cause than his own will or choice." *DiIorio v. Abington Mutual Fire Insurance Co.*, 121 R.I. 689, 696, 402 A.2d 745, 748 (1979) (citing *Gray*, 63 R.I. at 367–68, 9 A.2d at 40). Given that defendant was present in the jurisdiction and available to be served with process during the entire three-year period after plaintiff filed her complaint, plaintiff's failure to serve her with process amounted both to a voluntary discontinuance and a neglect to prosecute the lawsuit.

For nearly three years plaintiff failed to serve defendant with the summons and complaint in her first lawsuit. This failure apparently resulted from plaintiff's inexcusable neglect and voluntary choice—not because defendant was elusive or difficult to locate. In her affidavit, defendant stated that she resided at the same address for the entire period of the statute of limitations. This was the same address that the police report listed when it described the underlying accident on which plaintiff based her claim. The defendant also held the same job from April 4, 1994, the date of the accident, until December 1998, and she registered her automobile in the state of Rhode Island during that entire time. In addition, defendant was neither a member of the armed services nor was she absent from this jurisdiction for any extended period of time. In contrast to her neglect to prosecute the first lawsuit, when plaintiff refiled her complaint in September 2000, she quickly located defendant and served her with process. Although by that time defendant had moved out of state and even had changed her last name, plaintiff was able to serve defendant less than two months after refiling her complaint.

In other contexts, this Court has not looked kindly on plaintiffs' attempts to refile their lawsuits when their failure to serve process in the prior action resulted from their own negligence. For example, we have affirmed a lower court's dismissal with prejudice when, after unsuccessful attempts at service, the plaintiffs served process based on information that had always been available to them. *Barton v. D'Attorro*, 106 R.I. 697, 700, 704, 262 A.2d 834, 836, 838 (1970) ("[S]ince the information on the basis of which plaintiffs succeeded in effectuating service * * * had been equally available for more than two years prior to the issuance of [the] third summons, plaintiffs had not exercised [reasonable] diligence * * *."). This plaintiff, rather than offering justifiable excuses for her failure to serve the defendant, seeks to take advantage of the savings statute after inexcusably neglecting to serve defendant for three years. But such a gross violation of Rule 4(*l*)—especially when considering the celerity with which plaintiff later

served defendant—constitutes the very type of neglect to prosecute and voluntary discontinuance that precludes the plaintiff from taking advantage of § 9–1–22's one-year refiling period.

Moreover, plaintiff's invocation of *Blessing v. Town of South Kingstown*, 626 A.2d 204 (R.I.1993), does not support her ability to qualify under the savings statute. In *Blessing*, the Court held that the plaintiff qualified for the savings statute when she failed to provide notice of her claim to a town council *before* filing suit against the municipality. *Id.* at 204. After the trial court dismissed her claim, the statute of limitations expired. *Id.* This Court held that plaintiff could refile her action under the savings statute because the trial court's dismissal of her complaint, for failing to present a notice of claim to the town council, was not a final judgment on the merits, but simply an indication that she had filed suit prematurely. *Id.* at 205. In other words, the plaintiff's failure to file a notice of claim with the town council constituted the failure to satisfy a condition precedent to filing the action, but it was not because of the plaintiff's neglect to prosecute an action already filed or to her voluntary discontinuance of same. Here, however, there is no dispute but that plaintiff timely filed her original complaint within the three-year statute of limitations. But she then failed to comply with the condition subsequent of serving defendant within a reasonable period after filing the lawsuit. Under the circumstances of this case, such a failure to serve process on an available defendant amounted to a voluntary discontinuance, because, by neglecting to cause the process to be served on an available defendant, plaintiff simply chose—voluntarily—not to do so.

The plaintiff's voluntary failure to serve process on defendant also amounted to a "neglect to prosecute" under the savings statute. *See, e.g., Ray v. Bokorney*, 133 Ill.App.2d 141, 272 N.E.2d 836, 837 (1971) ("A summons was issued but never served upon defendant. * * * [T]hree years later, plaintiff's suit was dismissed for want of prosecution."). Although G.L.1956 § 9–8–3 and Rule 41(b)(1) of the Superior Court Rules of Civil Procedure require a five-year period of inactivity before a court can dismiss a case *with prejudice* for want of prosecution, no such five-year requirement exists for dismissing a case under Rule 4(*l*) *without prejudice* for neglect to serve process in a timely manner. Such a disposition simply means that, in contrast to a Rule 41(b)(1) dismissal with prejudice, the dismissal itself will not prejudice any refiling of the case. But it does not inoculate the claim against a future dismissal on statute-of-limitations grounds or because of some other applicable defense.

In sum, the plaintiff's failure to serve the defendant for approximately three years after filing her original complaint resulted from her own neglect and voluntary inaction. Accordingly, I would hold that this omission constituted a voluntary discontinuance and a neglect to prosecute, thereby precluding application of the savings statute to her case.

**Conclusion**

For these reasons, I would dismiss the plaintiff's notice of appeal as untimely because the parties waived their right to the entry of a judgment on a separate document by failing to obtain such a judgment within a reasonable period after entry of the summary-judgment order. In addition, I would affirm the motion justice's granting of the defendant's motion for summary judgment because the plaintiff's failure to serve process in accordance with Rule 4(*l*) constituted a voluntary discontinuance and a neglect to prosecute her original lawsuit, either of which ground precluded her from relying on the savings

statute to refile her complaint after the statute of limitations had expired.